**SIGNED THIS: June 23, 2008**

_____
 **MARY P. GORMAN
 UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

In Re                                )
                                     )    In Bankruptcy
TRACY LEE HAGEMAN,                   )
                                     )    Case No. 07-71840
           Debtor.                   )

## O P I N I O N

This case comes before the Court for decision after trial on the Objection to Claim of Exemption filed by Sunrise Ag Services Co. ("Sunrise") with respect to the Debtor's claim of a homestead exemption in property commonly known as 313 West Frederick, Arenzville, Illinois ("the Arenzville property"). For the reasons set forth herein, the Objection will be denied.

Tracy Lee Hageman ("Debtor") filed his voluntary petition under Chapter 7 of the Bankruptcy Code on September 6, 2007. On his schedules, Debtor disclosed ownership of the Arenzville

-1-

property and describes it as "Brick A-Frame Building - Apartment and Office." The Debtor valued the Arenzville property at $16,500 and stated that it was subject to a first mortgage lien of Heritage Bank of Central Illinois to secure a debt in the amount of $8,000. Debtor lists his home address on his petition as the Arenzville property, and the Debtor claimed the equity in the Arenzville property as exempt under the Illinois homestead exemption statute. 735 ILCS §5/12-901.

Debtor's schedules identify Sunrise as an unsecured creditor owed $16,081.54 on a business line of credit. Debtor's Statement of Financial Affairs discloses that Sunrise has sued Debtor in state court to collect the amounts due. Sunrise filed a timely objection to the Debtor's claim of a homestead exemption in the Arenzville property. The basis for the objection is an assertion that the Debtor did not occupy the Arenzville property as his residence and, therefore, is not entitled to claim a homestead exemption in it.

This matter was tried on May 28, 2008. The Debtor testified that he operates a business known as Hageman Basement Contractors and that he began to occupy the Arenzville property as a tenant several years before he purchased the property in June, 2003. During that rental period, the property was used only for business purposes. During the summer of 2003, the Debtor was also finalizing his divorce from Amy Hageman. As part of the divorce

settlement, Amy Hageman was awarded the parties' marital home and the Debtor was ordered to vacate that home.

When the Debtor purchased the Arenzville property, it consisted of shop and office spaces. The shop space includes a garage area. Because he had nowhere else to go after leaving his prior marital home, the Debtor initially slept in his truck in the Arenzville property garage. For a period of about eight months after the purchase, he worked on building out a living space in the Arenzville property. Eventually he finished that work and brought in a bedroom set, couch, table, television, and other items to create a livable space. He also had a refrigerator, microwave, and coffee pot on the premises. He built closets for his clothing. There is a bathroom, but no shower in the building.

The Debtor testified that, during the eight-month period he was constructing the living space, he did not exercise his overnight or weekend visitation privileges with his two minor sons. After he completed the build out, however, his boys spent every other weekend with him at the Arenzville property. He testified that one of the boys slept in the bed that he had brought in and the other slept on an air mattress. He took the boys back to his ex-wife's or to his mother's home to shower during those weekends.

Debtor testified that he resided at the Arenzville property from the time commencing about eight months after purchase in June, 2003, until January 1, 2008. On December 31, 2007, he married

Linda Upchurch and moved into her residence in Beardstown, Illinois the next day.  During the time that he lived in the Arenzville property, the Debtor testified that he ate out most of the time and showered either in hotels when he was traveling for business or at Ms. Upchurch's home when he was there.  The Debtor testified that, prior to his marriage to Ms. Upchurch, he spent about 10% of his nights staying with her rather than at the Arenzville property.

The Debtor introduced into evidence his Illinois driver's license dated June 5, 2007, and his undated voter registration card, both of which identified his home address as the Arenzville property.  He also introduced a letter dated in June, 2007, from the Social Security Administration addressed to him at the Arenzville property address.

The Debtor admitted that he had never applied for an owner occupancy exemption on his real estate taxes for the Arenzville property.  He also acknowledged that, on his 2006 federal tax return dated in June, 2007, he included a depreciation schedule claiming that the Arenzville property was used 100% for business and also deducted all bills for utility service for the property as business expenses.  The Debtor made no attempt to segregate out any portion of the building's expenses as personal expenses but, rather, claimed all expenses as fully deductible business expenditures.

Also testifying at the trial was Donald Zwicker, credit

manager of Sunrise.  Mr. Zwicker testified about the debt owed to Sunrise and stated that, when the line of credit was established by the Debtor with Sunrise, the Arenzville property was listed on the credit application as a business address.  Mr. Zwicker also identified a series of photographs he had taken on February 12, 2008, at the Arenzville property.  The photos showed a shop area with trucks and equipment, and an office area with a desk and computer.  The photos showed a trailer outside of the building where a mattress set is clearly visible.  Finally, several photos showed an open area with a couch and table, but also a motorcycle stored in the same room.  Mr. Zwicker described the building as being located in a commercial area.  He saw little evidence on his visit that the property had been occupied as a residence.

The final witness at the hearing was Amy Hageman, the Debtor's ex-wife.  Mrs. Hageman was called as a witness by Sunrise.  Sunrise introduced a series of emails between Sunrise's counsel and Mrs. Hageman dated September 26, 2007.  The initial email from counsel was not included but, apparently, it was a request to Mrs. Hageman to talk with counsel about the Debtor.  Her response, which was included, stated that she was not comfortable talking with counsel about her ex-husband and wanted to stay out of his business.  Counsel's response was that he wanted her to confirm where the Debtor resided and asked, "I have him living in Beardstown ...correct?"  Mrs. Hageman responded, "That is correct."

Although Mrs. Hageman acknowledged the emails as authentic, she clarified that she was not saying in the email that her ex-husband resided in Beardstown but, rather, she was agreeing that he could often be found there.  She stated that when she or her sons were trying to contact the Debtor and could not find him at the Arenzville property or by calling his cell phone, they would call Ms. Upchurch's residence in Beardstown to see if he was there.

Mrs. Hageman confirmed the Debtor's testimony that he did not exercise his full visitation privileges with his sons until he completed his build out.  She consistently referred to the Arenzville property as "the apartment".  She stated that, after the build out was completed, she purchased a loveseat for the "apartment" so her boys would have a place to sleep.  She said that she was aware that one of the boys was sleeping on the air mattress.  She candidly admitted that, although the boys were fine with the arrangements, she and the Debtor fought about it regularly.

Illinois law provides a homestead exemption of $15,000 in land and buildings occupied as a residence.  735 ILCS §5/12-901.  In order to qualify for the exemption, a debtor must have some claim of title to the premises and also occupy the premises as a residence.  In re Miller, 174 B.R. 279, 282 (Bankr. N.D. Ill. 1994); Home Building & Loan Ass'n. v. McKay, 217 Ill. 551, 555-56, 75 N.E. 569, 570 (1905).  Exemption statutes should be liberally

construed in favor of a debtor.  In re Barker, 768 F.2d 191, 196 (7th Cir. 1985).  Further, when it is possible to interpret an exemption statute either favorably or unfavorably for a debtor, the favorable interpretation should be chosen.  Id.; In re Dealey, 204 B.R. 17, 18 (Bankr. C.D. Ill. 1997).

Sunrise does not dispute that the Debtor acquired title to the Arenzville property in June, 2003.  Sunrise disputes that the Debtor occupied the Arenzville property as his residence.  The uncontradicted evidence was, however, that the Debtor built out a living space or "apartment" on the property during the eight-month period following his purchase.  It is also undisputed that the Debtor brought in a bedroom set, couch, table, television, microwave, coffee pot, and other items to furnish the living space during that time.  The Debtor exercised his visitation rights with his sons for a period of several years by having them stay with him at the Arenzville property.  The living conditions at the Arenzville property were modest.  However, it is not a requirement for claiming a homestead that the residence in question contain all, or even most, of the comforts that many of us expect in a home.

Sunrise suggests that the Debtor's failure to claim an owner occupancy exemption on his real estate tax bill is evidence that the Debtor did not occupy the premises as a residence.  The Court disagrees.  When the Debtor first purchased the Arenzville property

and the tax bill was put in his name, he did not occupy the property as a residence and could not have claimed the exemption. Debtor testified that he was unaware of the exemption and his testimony in that regard was credible.  His failure to apply for the owner occupancy exemption on real estate taxes is not evidence that he was not entitled to that exemption or to the homestead exemption claimed here.

More troubling for the Debtor is the fact that his 2006 tax return shows that he claimed on a depreciation schedule that the property was used 100% for business.  Debtor also deducted all utilities for the premises as business expenses.  Again, when the Debtor first purchased the property in 2003, these deductions were proper.  However, once the Debtor began occupying a portion of the property as a residence, a portion of the expenses associated with the property should have been allocated to that personal use and the deductions on the return should have been reduced accordingly. The Debtor testified that he is unsure if he told his accountant about the personal use of the property.  However, the Arenzville property's address is shown on the return as the Debtor's home address.  The Debtor testified credibly that he did not fully understand the tax calculations and would not have known how to separate out the personal expenses.  The Debtor's statement on his 2006 return that the property was used 100% for business is certainly evidence which supports Sunrise's position.  Overall,

however, it appears to this Court that the tax return is incorrect and that deductions were taken on the return which the Debtor was not entitled to take. This Court cannot find that the information contained on the return is sufficient, standing alone, to establish that the Debtor did not reside in the Arenzville property.

Sunrise also argues that Mrs. Hageman's email exchange of September 26, 2007, with its counsel establishes that the Debtor was living in Beardstown rather than Arenzville. This Court disagrees. First, the email correspondence is cryptic. Counsel says, "I have him living in Beardstown." She responds, "That is correct." No foundation was laid as to the basis of Mrs. Hageman's knowledge of exactly where the Debtor was living at the time. Further, her email sent just minutes before said she did not want to be involved in her ex-husband's affairs. She testified credibly at trial that she only meant that he could often be found in Beardstown. Further, Mrs. Hageman's testimony clearly confirmed that the Debtor had built out a living space in the Arenzville property and had occupied that space as a residence for a period of years. Overall, Mrs. Hageman's testimony supported the Debtor rather than Sunrise.

Mr. Zwicker testified that, when he visited the Arenzville property in February, 2008, it did not appear to be occupied as a residence. However, by then, the Debtor had remarried and, admittedly, had moved into the home of his new wife. Exemptions

are determined as of the date of the case filing.  A debtor is not required to maintain exempt property in its exempt state indefinitely after filing in order to avoid a retroactive loss of the exemption.  <u>In re Snowden</u>, 386 B.R. 730, 2008 WL 1902484 *4 (Bankr. C.D. Ill.); <u>In re Walston</u>, 190 B.R. 855, 859 (Bankr. S.D. Ill. 1996).

All of the evidence presented establishes that, commencing approximately eight months after the he purchased the Arenzville property in June, 2003, the Debtor began occupying a portion of the premises as his residence.  At that time, he became eligible to claim the property exempt as his homestead.  He admits to leaving that homestead and ceasing his residential occupancy of the Arenzville property on January 1, 2008, more than three months after this case was filed.  Sunrise has failed to prove by a preponderance of the evidence that the Debtor abandoned his homestead prior to January 1, 2008, and therefore cannot succeed in its objection.

For the reasons set forth above, Sunrise's Objection to the Debtor's claim of a homestead exemption in the Arenzville property will be denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###